IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JOE HAND PROMOTIONS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 1:19-CV-618-RP |
| | § | |
| FUSION HOOKAH, LLC, *d/b/a* | § | |
| ALI BABA HOOKAH AND SOCIAL | § | |
| LOUNGE and *d/b/a* ALI BABA'S | § | |
| HOOKAH AND SOCIAL LOUNGE, | § | |
| JUSTIN DIXON, and JESUS LEON, | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court is Plaintiff Joe Hand Promotion, Inc.'s ("JHP") Motion for Default

Judgment against Defendant Jesus Leon ("Leon"). (Dkt. 11). Having considered JHP's motion, the

record, and the relevant law, the Court finds that the motion should be granted.

## I.  BACKGROUND

JHP alleges the following facts in its complaint. (Dkt. 1). JHP describes itself as "a company

that specializes in distributing and licensing premier sporting events to commercial locations such as

bars, restaurants, lounges, clubhouses, and similar establishments." (*Id.* at 4). Specifically, JHP is the

"exclusive domestic commercial distributor for the world's premier mixed martial arts promotion

company, the Ultimate Fighting Championship®." (*Id.*). JHP held exclusive commercial distribution

rights to the broadcast of *Ultimate Fighting Championship® 200: Tate vs. Nunes* (the "Program") in the

United States, which it allowed various commercial establishments in Texas to broadcast for an

authorization fee. (*Id.* at 1, 4). JHP alleges that Defendants Fusion Hookah LLC *d/b/a* Ali Baba

Hookah and Social Lounge *d/b/a* Ali Baba's Hookah and Social Lounge (collectively,

"Defendants"), Justin Dixon, and Jesus Leon exhibited the Program in their commercial

establishment, Ali Baba's Hookah ("Ali Baba"), without proper authorization. (*Id.* at 4–5). JHP accuses Defendants of pirating JHP's licensed exhibition of the Program and infringing on JHP's exclusive rights "willfully and with the purposes and intent to secure a commercial advantage and private financial gain." (*Id.* at 5).

On June 14, 2019, JHP filed this action against Defendants, seeking damages for violations under the Federal Communications Act ("FCA"), 47 U.S.C. §§ 553, 605, and statutory damages pursuant to 47 U.S.C. § 605 or, alternatively, 47 U.S.C. § 553. (*Id.* at 5–6). JHP also seeks to recover attorney's fees and costs under 47 U.S.C. § 605. (*Id.* at 6). On July 30, 2019, JHP served Leon. (Dkt. 4). On September 12, 2019, JHP moved for entry of default, (Dkt. 6), and on June 13, 2020, the clerk entered default, (Dkt. 7). The remaining defendants were dismissed shortly thereafter. (Dkt. 13). Still, no Defendant has appeared; JHP's motion is thus unopposed.

## II. LEGAL STANDARD AND DISCUSSION

Under Federal Rule of Civil Procedure 55(a)–(b), federal courts have the authority to enter a default judgment against a defendant that has failed to plead or otherwise defend itself. That said, "[d]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). A party is not entitled to a default judgment simply because the defendant is in default. *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996). Rather, a default judgment is generally committed to the discretion of the district court. *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977).

In considering JHP's motion, the Court must determine: (1) whether default judgment is procedurally warranted; (2) whether JHP's complaint sets forth facts sufficient to establish that it is entitled to relief; and (3) what form of relief, if any, JHP should receive. *United States v. 1998 Freightliner VIN #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008).

### A.  Procedural Requirements

To determine whether entry of a default judgment is procedurally warranted, district courts in the Fifth Circuit consider six factors: "[1] whether material issues of fact are at issue, [2] whether there has been substantial prejudice, [3] whether the grounds for default are clearly established, [4] whether the default was caused by a good faith mistake or excusable neglect, [5] the harshness of a default judgment, and [6] whether the court would think itself obliged to set aside the default on the defendant's motion." *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

On balance, the *Lindsey* factors weigh in favor of entering a default judgment against Leon. Because Leon has not filed a responsive pleading, there are no material facts in dispute. *See Nishimatsu Const. Co., Ltd. v. Hous. Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact."). Leon's failure to appear and respond has ground the adversary process to a halt, prejudicing JHP's interest in pursuing its claim for relief. *See Ins. Co. of the W. v. H & G Contractors, Inc.*, No. CIV.A. C-10-390, 2011 WL 4738197, at *3 (S.D. Tex. Oct. 5, 2011) ("Defendant's failure to respond threatens to bring the adversary process to a halt, effectively prejudicing Plaintiff's interests."). The grounds for default are established: Leon was properly served and has failed to appear and participate at all, much less timely file responsive pleadings. There is no indication that the default was caused by a good faith mistake or excusable neglect. The amount of a default judgment in this case may or may not be especially "harsh"—JHP seeks statutory awards totaling $10,000.00 in statutory damages, $50,000.00 in additional damages, $550.00 in costs, and $3,700.00 in attorney's fees. (Mot., Dkt. 11, at 13–17). In any case, though, the Court is not aware of any facts that would obligate it to set aside the default if challenged by Leon. The Court therefore finds that default judgment is procedurally warranted.

**B.  Sufficiency of JHP's Complaint**

Default judgment is proper only if the well-pleaded factual allegations in JHP's complaint establish a valid cause of action. *Nishimatsu Constr. Co.*, 515 F.2d at 1206. By defaulting, a defendant "admits the plaintiff's well-pleaded allegations of fact." *Id.* In determining whether factual allegations are sufficient to support a default judgment, the Fifth Circuit employs the same analysis used to determine sufficiency under Rule 8. *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The factual allegations in the complaint need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Wooten*, 788 F.3d at 498 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While "detailed factual allegations" are not required, the pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

JHP asserts that Leon, along the with other Defendants, "intercepted the interstate communications of the Program" by unauthorized satellite transmission or unauthorized receipt over a cable system, in violation of the FCA under 47 U.S.C. §§ 553, 605. (Compl., Dkt. 1, at 4–5). Leon then exhibited the Program "willfully and for the purpose and intent to secure a commercial advantage and private financial gain." (*Id.* at 5). JHP seeks damages for willful violation of 47 U.S.C. § 605 or, alternatively, for statutory damages for violation of 47 U.S.C. § 553. (*Id.* at 5–6). The Court proceeds by evaluating the sufficiency of JHP's claims.

JHP argues that its complaint sufficiently establishes liability under the FCA for Leon's alleged unauthorized interception and broadcast of the Program. (Mot., Dkt. 11, at 11–8). A person violates § 605 when they "intercept[s] any radio communication ... or receive[s] or assist[s] in receiving any interstate or foreign communication by radio and use[s] such communication ... for

[their] own benefit or for the benefit of another not entitled thereto." 47 U.S.C. § 605(a). Similarly, one violates § 553 by "intercept[ing] and receiv[ing] or assist[ing] in intercepting or receiving any communications service offered over a cable system" without authorization. 47 U.S.C. § 553(a)(1). The unauthorized interception of satellite or cable transmissions violates both §§ 553 and 605. *Entm't by J & J, Inc. v. Al–Waha Enters.*, 219 F.Supp.2d 769, 774 (S.D.Tex.2002). The pleadings establish that the Program was broadcast to patrons of Ali Baba without authorization for their own commercial benefit, and that Leon was the owner of Ali Baba at the time of the violation. (Compl., Dkt, 1, at 3, 4–5). JHP has thus sufficiently established claims for relief under the FCA.

### C.  Relief

Federal Rule of Civil Procedure 54(c) states that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). In other words, the relief prayed for in a complaint defines the scope of relief available on default judgment. *Id.*

A defendant's default concedes the truth of the allegations of the complaint concerning the defendant's liability, but not damages. *United States v. Shipco Gen. Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987). Ordinarily, damages will not be awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts. *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). However, when the amount of damages or costs can be determined with certainty by reference to the pleadings and supporting documents, and when a hearing would not be beneficial, a hearing is unnecessary. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993). A sum capable of mathematical calculation is one that can be "computed with certainty by reference to the pleadings and supporting documents alone." *Id.* at 311.

A party aggrieved by a violation of § 605 may elect to receive either actual damages or statutory damages. 47 U.S.C. § 605(e)(3)(C)(i). Statutory damages for each violation of the section

must be awarded in an amount no less than $1,000 and no more than $10,000, as the Court finds just. 47 U.S.C. § 605(e)(3)(C)(i)(II). If the Court finds that a violation was committed "willfully and for purposes of direct or indirect commercial advantage or private financial gain," it may, in its discretion, increase the damage awarded by an amount of not more than $100,000. 47 U.S.C. § 605(e) (3)(C)(ii). An aggrieved party who prevails shall receive full costs, including reasonable attorney's fees. 47 U.S.C. § 605(e)(3)(B)(iii).

In its motion for default judgment, JHP seeks statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) and damages for willful conduct under 47 U.S.C. § 605(e)(3)(C)(ii), as well as attorney's fees and costs. (Dkt. 11, at 8–17). First, the Court examines the statutory damages that JHP seeks. JHP seeks statutory rather than actual damages and asks for an award of $10,000, the statutory maximum, against Leon. (*Id.* at 9). JHP argues that "it would be impossible to determine the full extent of the profits" it lost and the additional damages sustained as a result of Defendants' unlawful actions. (*Id.*). JHP also claims it is entitled to "additional compensation as it has been deprived of the 'value, benefits and profits derived' from the unauthorized broadcast" of the Program at Ali Baba, "as well as the value of 'business investment, business opportunities and goodwill.'" Id. at 12 (quoting *Am. Television and Commc'ns. Corp. v. Floken, Ltd.*, 629 F. Supp. 1462, 1466 (M.D. Fla. 1986)). To support its claim for damages, JHP offers an affidavit from its president, detailing how Leon's actions impact JHP's revenue, reputation, and ability to compete. (Hand Aff., Dkt. 11-2, at 6).

Courts have assessed various amounts in statutory damages for violations similar to those presented here. *See, e.g., J & J Sports Prods., Inc. v. Beck*, 2013 WL 5592333, at *2 (S.D. Tex. Oct. 9, 2013) (slip copy) (awarding base statutory damages in the amount of $5,000); *Entm't by J & J, Inc. v. Al–Waha Enters.*, 219 F. Supp. 2d 769, 774 (S.D. Tex. 2002) (awarding base statutory damages of $5,000). While the court agrees that the award of statutory damages should be greater than the

sublicensing fee, it finds JHP's requested damages—$10,000.00—to be excessive. Instead, this court concurs with numerous others that a reasonable award is around two to three times what would have been the cost to Defendants had they followed the law. *See G & G Closed Circuit Events LLC v. Rivals Sports Grill LLC*, 2014 WL 198159, at *4 (W.D. La. Jan. 14, 2014); *J&J Sports Prods., Inc. v. Rodriguez*, 2013 WL 3967833, at *2 (W.D. Tex. July 31, 2013); *Joe Hand Promotions, Inc. v. Garcia*, 546 F. Supp. 2d 383, 386 (W.D. Tex. 2008). Taking into account the need to deter future violations and the fact that the sublicensing fee here would have been approximately $893.00 had Defendants actually paid to broadcast the Program, the Court finds that statutory damages in the amount of $2,500 is reasonable. *See* Hand Aff., Dkt. 11-2, at 3; Rate Card, Dkt. 11-4; *see, e.g.*, *Al–Waha Enters.*, 219 F. Supp. 2d at 776 ("Merely requiring Al–Waha to pay the price it would have been charged to obtain legal authorization to display the event does nothing to accomplish this object [to deter future violations of the FCA].").

Next, the Court addresses JHP's request for additional damages in the amount of $50,000 for Defendants' willful actions for "purposes of direct or indirect commercial advantage or private financial gain." (Dkt. 11, at 13) (citing 47 U.S.C. § 605(e)(3)(C)(ii)). JHP argues that Defendants "could not have 'innocently' accessed the broadcast of the Program" due to the complexity of intercepting transmissions. (Dkt. 11, at 14). JHP also presented evidence which establishes Defendants exhibited the Program for either direct or indirect commercial gain. For example, Defendants charged a cover fee to view the Program, advertised the showing of the Program on social media, and displayed the Program on multiple televisions. (*Id.* at 15; Auditor Aff., Dkt. 11-5). The Court finds that the evidence and allegations here are sufficient to support a finding of willfulness. *See Al–Waha Enters.*, 219 F. Supp. 2d at 777 (finding willfulness given the "limited methods of intercepting closed circuit broadcasting of pay-per-view events" and "the low probability that a commercial establishment could intercept such a broadcast merely by chance").

7

Having found willfulness and commercial motive, the Court turns to the question of the appropriate amount of damages to award. The Court has discretion to increase the award of damages up to $100,000.00. *See* 47 U.S.C. § 605(e)(3)(C)(ii). Here, JHP has provided the affidavit of hired auditors who entered Ali Baba on the night in question and observed the Program being shown on eight televisions. (Auditor Aff., Dkt. 11-5, at 1). The auditor paid a $5 cover charge to enter Ali Baba on the night the Program was displayed. (*Id.*). The auditor took three head counts of 6, 6, and 9 people, respectively, and estimated that Ali Baba's capacity was 60 people. (*Id.*). This auditor also provided photos. (*Id.*, at 3–12).

JHP suggests an award of $50,000.00 in additional damages—quintuple its suggested statutory damages of $10,000.00—is justified to meaningfully penalize Defendants' willful violation of the FCA. The court disagrees. A quadrupling or quintupling of damages is generally reserved for circumstances involving unauthorized showings to a larger number of patrons. *See, e.g., Joe Hand Promotions, Inc. v. Alima*, 2014 WL 1632158, at *5 (N.D. Tex. Apr. 22, 2014) (awarding four times the statutory base award as additional damages where defendant showed event to approximately 85 to 125 patrons). Instead, based on the evidence currently before the court—in particular, the advertising of the Program, the number of patrons, and the number of screens showing the Program—and the need to deter future violations, the court finds that additional damages equal to two times the base statutory damages is reasonable. The court therefore grants JHP's request for additional damages and awards JHP the sum of $2,500.00.

Under the FCA, the Court is required to order the recovery of full costs, including attorneys' fees, to an aggrieved party who prevails. 47 U.S.C. § 605(e)(3)(B)(iii). JHP here requests an award of $1,200.00 worth of attorneys' fees. In support of the request JHP presents an affidavit from its counsel, Jamie King, ("King"), who requests $250 per hour for the 4.80 hours of work that she expended in connection with this litigation. (Dkt. 11-8, at 2).

8

The determination of a fees award is a two-step process. *Heidtman v. Cty. of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999). First, a court calculates a "lodestar" figure "by multiplying the number of hours reasonably expended by an appropriate hourly rate in the community for such work." *Id.* In making that calculation the court considers whether the attorneys demonstrated proper billing judgment. *Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 769 (5th Cir. 1996). After calculating the lodestar, the court may increase or decrease it based on a number of factors including the time, labor and skill required, the novelty and difficulty of the issues, the amount involved and results obtained, as well as the award in similar cases. *Heidtman*, 171 F.3d at 1043. Given this estimate as well as the evidence and circumstances of the case, the Court finds JHP's request for $1,200.00 to be reasonable and declines to adjust it.

JHP also seeks attorney's fees for post-trial or appellate services, including in the amounts of $2,500.00 for collection of the judgment in the event that JHP obtains a writ of execution, writ of garnishment, writ of attachment, or other process; in the amount of $5,000.00 in the event that any Defendant files a post-judgment motion or pre-appeal motion that does not result in a reversal of the judgment; in the amount of $15,000.00 in the event that any Defendant files an appeal that does not result in a reversal of the judgment. (King Aff., Dkt. 11-8, at 3–4) (stating only that "counsel for Plaintiff makes the following estimates . . ."). The court declines to award such fees at this time. *See, e.g., J&J Sports Prods., Inc. v. Beck*, 2013 WL 5592333, at *4 (S.D. Tex. Oct. 9, 2013) (declining to award the similar conditional fees on the basis of a single statement by plaintiff's counsel that it was their opinion that such fees were reasonable).

JHP also seeks costs in the amount of $550.00, consisting of $400.00 in filing fees for the Complaint and $150.00 service of process fees for Leon. (King Aff., Dkt. 11-18, at 4; Dkt 11-9). JHP seeks $400.00 in filing fees although three defendants were sued in this case. (King Aff., Dkt.

11-18, at 4). Accordingly, $283.00 is attributable to Leon, not the $550.00 requested. Accordingly, the Court will award $1,200.00 in attorneys' fees and $283.00 in costs.

### III.  CONCLUSION

For the reasons given above, **IT IS ORDERED** that JHP's Motion for Default Judgment, (Dkt. 29), is **GRANTED**.

**IT IS FURTHER ORDERED** that JHP shall recover the following sums from Leon:

1. $2,500.00 in statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II);

2. $2,500.00 in additional damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii);

3. $1,200.00 in reasonable attorney's fees; and

4. $283.00 in court costs pursuant to 47 U.S.C. § 605(e)(3)(B)(iii).

**IT IS FINALLY ORDERED** that all sums awarded above shall bear post-judgment interest to be calculated and compounded pursuant to 28 U.S.C. § 1961, until paid in full.

The Court will enter final judgment in a separate order.

**SIGNED** on November 23, 2020.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE